425 So.2d 1147 (1982)
Lorraine Feitsma LAFFERTY a/K/a Lorraine Howard, Appellant/Cross-Appellee,
v.
ALLSTATE INSURANCE COMPANY, Bruno F. Cassens and Ruth Steel Cassens, Appellees/Cross-Appellants.
No. 81-279.
District Court of Appeal of Florida, Fourth District.
December 15, 1982.
Rehearing Denied January 11, 1983.
*1148 J. Michael Brennan of Brennan & Muschott, Fort Pierce, for appellant/cross-appellee.
Bradford L. Jefferson of Brennan, McAliley, Hayskar & McAliley, Fort Pierce, for appellees/cross-appellants.
BERANEK, Judge.
Plaintiff appeals and defendant cross appeals alleging error in the trial of a personal injury case which resulted in a $3,700 verdict and a $2,500 additur on post trial motion. We reverse and remand for new trial based on the admission of evidence relating to plaintiff's failure to wear seat belts and the court's instruction thereon. The defendant introduced expert testimony that plaintiff's facial and knee injuries would not have occurred if she had been wearing the shoulder and lap belts which were available in her automobile. This evidence was objected to both prior to and during trial. The court admitted the evidence and instructed the jury that plaintiff's failure to wear an available seat belt could be considered in deliberations on plaintiff's claims. We hold that such evidence is inadmissible both as a defense on liability and as a limitation on damages.
The legal issue of seat belt usage or nonusage is widely debated and inconsistently applied by courts in current auto accident personal injury litigation. See: Annot. 80 A.L.R.3d 1033 (1977) [Nonuse of Seat Belts as Failure to Mitigate Damages]; and Annot. 92 A.L.R.3d 9 (1979) [Automobile Occupant's Failure to Use Seat Belts as Contributory Negligence]. Judicial consideration has taken three approaches by either excluding the evidence or admitting it as bearing on negligence or damages. Those cases admitting seat belt evidence generally require expert testimony as to the enhancement of the plaintiff's injuries due to his or her failure to buckle up.
In Brown v. Kendrick, 192 So.2d 49 (Fla. 1st DCA 1966), the First District held it was not within the province of the courts to legislate on the use of seat belts and thus found that refusal to allow evidence of a failure to use seat belts as constituting a defense to liability was not error. Notwithstanding the intervening sixteen years and Florida's adoption of comparative negligence, we are still impressed with the wisdom of that decision.
The validity of judicial restraint requiring legislation by the Legislature is extremely well stated in Peterson v. Klos, 426 F.2d 199 (5th Cir.1970):
An argument that decedent was under a duty to wear his seat belt, imposed by the common law, is fraught with difficulties. Before this new safety device can be said to modify the standard of ordinary care, there must be some consensus as to its utility. There was no evidence before the district court concerning the safety value of seat belts. Research and statistical experience indicate that seat belts are beneficial in most accident situations, though the lap belt has been found to cause rather than prevent injury in certain crash conditions.
In spite of statistics, expert opinion, and safety campaigns, there is indication that the general motoring public still does not consider seat belts a necessary accoutrement of safe driving. As noted by one commentator:

*1149 The social utility of wearing a seat belt must be established in the mind of the public before failure to use a seat belt can be held to be negligence. Otherwise the court would be imposing a standard of conduct rather than applying a standard accepted by society.
Yet another problem was recognized by the Supreme Court of North Carolina in Miller v. Miller [273 N.C. 228, 160 S.E.2d 65]. The court observed that, excluding the most bizarre circumstances, "there are no standards by which it can be said that the use of seat belts is required for one trip and not for another," since a motorist ordinarily must engage the seat belts before the imminent danger of an accident is apparent. If a duty to use seat belts is recognized, it must then be an absolute duty, not dependent on the circumstances of a particular accident. As the Miller court noted, no court has as yet held the failure to use seat belts to be negligence per se. Some courts have concluded that the question requires arbitrary resolution and commends itself to the legislative body for determination as a question of public policy. [citing, inter alia, Brown v. Kendrick, supra; footnotes otherwise omitted] 426 F.2d at 204-05.
We concur in this reasoning and are particularly persuaded by the fact that buckling up almost always occurs in the abstract and without regard to a particular accident. Individual injuries, depending upon their own out-of-court experience, should not be given free reign to reach inconsistent conclusions about whether a reasonably prudent person should have engaged his seat belt. Evidence of enhanced injuries from no seat belt is hindsight. What evidence would be relevant as to whether plaintiff should have used the belt before the accident? The test results, surveys, and statistics on the effectiveness of seat belts are traditionally the basis for legislative consideration. A jury should not find the existence or nonexistence of a legal duty to use a belt based upon such traditionally legislative materials. Florida's Legislature has had two decades in which to enact a statute similar to that enacted in 1971 requiring motorcycle riders to wear helmets. See Section 316.211, Florida Statutes (1981). The fact that the Legislature has chosen to remain silent on the seat belt issue, while taking a stance on the helmet issue, may be taken as a declaration that the defense is not recognized. We conclude that judicial restraint is here the better course.
Having dealt with the seat belt defense, we now turn our attention to the mitigation of damages issue. No Florida court has specifically determined whether seat-belt nonuse may be considered solely in mitigation of plaintiff's damages. Case law from other jurisdictions is split and respectable judicial reasoning and authority exists on both sides of the issue. See Annot. 80 A.L.R.3d 1033 (1977), Nonuse of Seat Belt as Failure to Mitigate Damages.
The view allowing the admission of such evidence is exemplified by the New York position in Spier v. Barker, 35 N.Y.2d 444, 363 N.Y.S.2d 916, 323 N.E.2d 164 (1974). There it was held that evidence of a plaintiff's nonsue of an available seat belt could be considered by the jury in its determination of damages. Expert testimony that nonuse of the seat belt actually resulted in increased injuries to the plaintiff was required. The court held that such evidence was properly considered in the determination of a plaintiff's damages. In Pritts v. Walter Lowery Trucking Co., 400 F. Supp. 867 (W.D.Pa. 1975), the court applied Pennsylvania law and concluded that admission of seat belt evidence was proper on the theory of avoidable consequences.
The view that such evidence is inadmissible was noted in Selfe v. Smith, 397 So.2d 348 (Fla. 1st DCA 1981). There, the court made reference to Amend v. Bell, 89 Wash.2d 124, 570 P.2d 138 (1977), and summarized the Washington court's reasons for disallowing evidence of seat belt nonuse as follows:
(1) plaintiff need not predict the defendant's negligence or anticipate an accident; (2) seat belts are not required in all vehicles, and defendant shouldn't be permitted *1150 to take advantage of the fact that they were installed in plaintiff's vehicle; (3) most people don't use seat belts, so a jury shouldn't be permitted to find that they should; and (4) allowing a seat belt defense will produce a "veritable battle of experts" on the causation question, and speculative verdicts. 397 So.2d at 351 n. 8.
Other concerns with allowing such evidence in mitigation of damages have also been expressed. For example, it is feared that permitting such testimony would lead to jury speculation concerning damages or would prove to be a windfall to tortfeasors. See, e.g., Fischer v. Moore, 183 Colo. 392, 517 P.2d 458 (1973). Moreover, it has been held that since the effectiveness of seat belts in preventing or limiting injury is still questionable, a nonuser would not be deemed prima facie unreasonable. Britton v. Doehring, 286 Ala. 498, 242 So.2d 666 (1970). Further, absent a statutory requirement to use seat belts, nonuse should not constitute a breach of duty justifying mitigation. Selgrado v. Commercial Warehouse Co., 88 N.M. 579, 544 P.2d 719 (1975).
Perhaps the most compelling reason for disallowing evidence of seat belt nonuse is the fault vs. damages or loss argument. A typical verdict form in an automobile case reads as follows:

 VERDICT
 We, the jury, return the following verdict:
 1. Was there negligence on the part of defendant which was a legal cause
 of damage to plaintiff?
 YES ____ NO ____
 If your answer to question 1 is NO, your verdict is for defendants, and
 you should not proceed further except to date and sign this verdict form
 and return it to the courtroom. If your answer to question 1 is YES,
 please answer question 2.
 2. Was there negligence on the part of plaintiff which was a legal cause
 of his damage?
 YES ____ NO ____
 If your answer to question 2 is YES, please answer question 3. If your
 answer to question 2 is NO, skip question 3 and answer question 4.
 3. State the percentage of any negligence which was a legal cause of
 damage to plaintiff, that you charge to:
 Defendant ____%
 Plaintiff ____%
 Total must be 100%
 Please answer question 4.
 4. What is the total amount (100%) of any damages sustained by plaintiff
 and caused by the incident in question?
 Total damages of plaintiff $ __________
 In determining the total amount of damages, do not make any reduction
 because of the negligence, if any, of plaintiff. If you have found
 plaintiff negligent in any degree, the court in entering judgment will
 reduce plaintiff's total amount of damages (100%) by the percentage of
 negligence which you found is chargeable to plaintiff.
 SO SAY WE ALL this ____ day of _________, 19__.
 ____________________
 Foreman or Forewoman

In answering questions 1-3, a jury is determining the legal cause of damage, or simply, fault. The jury looks at the facts and decides, in lay terms, whose fault it was. It fixes a percentage of fault to each party totaling 100% for causing the accident. As an example, let us take a situation where the defendant is 80% negligent, and the plaintiff is 20% negligent in causing an accident with damages of $50,000. Plaintiff's judgment would then be in the amount of $40,000. However, if evidence is admitted that, had the plaintiff been wearing a seat belt, he would have suffered only 10% of his injuries, where on the verdict form does the jury take this information into account? Certainly, the jury should not be considering nonuse of seat belts in questions 2 and 3; their use or nonuse was not the cause of the accident. Do we add another question to the verdict form on mitigation of damages? In our example, should plaintiff's recovery of $40,000 be reduced by 90% to $4,000? We think not. Should we simply let the jury blend all of the factors together without being able to even verbalize the logical steps by which they should arrive at a conclusion?
However trite it may be, we still hold to the basic concept that a tortfeasor takes his plaintiff as he finds him. Mitigation of damages concerns a plaintiff's conduct after an accident, not before. Were we to admit evidence of nonuse of seat belts, we may well be obligated to admit evidence of other pre-accident conduct dealing with safety issues. For example, numerous studies *1151 have shown that standard-size cars are safer than compact or sub-compact cars. Should a plaintiff be penalized for not taking this safety factor into consideration when purchasing a car? Further, hardtops are safer than convertible tops. Is this for jury consideration and for court to instruct on? What about evidence demonstrating that had the convertible top been up rather than down, plaintiff would not have sustained any injuries? We view such evidence of prior conduct as a Pandora's box which we decline to open. Furthermore, the prior regulation of conduct is a matter for the legislature rather than the courts to decide.
We also have great difficulty comparing the negligence of failing to buckle up with the negligence of causing an accident. The unbuckled plaintiff's conduct seems mild and acceptable while sitting innocently at a stoplight when contrasted with a hypothetical speeding and intoxicated driver who is 100% at fault in the resulting rear end collision. Should such a reprehensibly negligent person have an advantage because his victim would have been safer with a seat belt? We think not. Our rule has always been that lawful driving of an automobile is not negligence. People lawfully driving a car on New Year's Eve probably know there will be drunks on the road but the innocent driver is not held negligent because he would have been safer at home. Absent a consistent legislative pronouncement reflecting public policy on the subject, we conclude that such evidence should not be admitted.
In the instant case, in addition to the reasons stated by the Washington court in Amend v. Bell, supra, we are convinced that the admission of the evidence in question has the effect of placing undue emphasis upon the single evidentiary fact that the injuries resulting from defendant's negligence may have been lessened by use of a seat belt. We hold the combined effect of the admission of the evidence and the court's instruction thereon constituted error requiring a new trial. On retrial the evidence shall not be admitted.
We certify the following question to the Florida Supreme Court as one of great public importance:
SHOULD FLORIDA COURTS CONSIDER SEAT BELT EVIDENCE AS BEARING ON COMPARATIVE NEGLIGENCE OR MITIGATION OF DAMAGES?
REVERSED AND REMANDED.
DOWNEY, J., concurs.
HURLEY, J., dissents with opinion.
HURLEY, Judge, dissenting.
I respectfully dissent. Although the majority opinion sets forth an attractive argument for reversal, I am persuaded by the rationale contained in Spier v. Barker, 35 N.Y.2d 444, 363 N.Y.S.2d 916, 323 N.E.2d 164 (1974), and in Judge Schwartz's dissent in Insurance Co. of North America v. Pasakarnis, 425 So.2d 1141 (Fla. 4th DCA Case No. 80-1895, opinion filed December 15, 1982). Accordingly, I would affirm the judgment.